1  Robert Tenorio Torres
   Attorney at Law
2  Plata Drive, Whispering Palms (Chalan Kiya)
   P.O. Box 503758 CK
3  Saipan, MP 96950

4
   Tel: (670) 234-7859
5  Fax: (670) 234-5749

6  Attorney for: Plaintiff James William Taylor

7
              **IN THE UNITED STATES DISTRICT COURT**
8             **FOR THE NORTHERN MARIANA ISLANDS**

9
   **JAMES WILLIAM TAYLOR,**          Civil Action No. **13-0012**
10                                    _____
11             **Plaintiff,**         **VERIFIED COMPLAINT FOR:**

12             **vs.**                **1. Violation of 29 U.S.C. § §
                                      621 - 634;**
13  **EDWARD T. BUCKINGHAM,**         **2. Breach of Contract;**
    **III, an individual;**           **3. Breach of Covenant of Good**
14  **COMMONWEALTH OF THE**           **Faith and Fair Dealing;**
    **NORTHERN MARIANA**              **4. Unlawful Constructive**
15  **ISLANDS; OFFICE OF THE**        **Termination in Violation of**
    **ATTORNEY GENERAL for the**      **Public Policy; and**
16  **COMMONWEALTH OF THE**           **5. Tortious Interference with**
    **NORTHERN MARIANA**              **Contract**
17  **ISLANDS; and DOES 1-10,**       **6. Demand for Jury Trial**
18  **inclusive,**

19
               **Defendants.**
20

21

22          Plaintiff James William Taylor, by and through his undersigned counsel,

23  brings this action against the Commonwealth of the Northern Mariana Islands

FILED
Clerk
District Court

APR 23 2013

for the Northern Mariana Islands
By_____
        (Deputy Clerk)

(hereinafter, the "CNMI"), the Office of the Attorney General (hereinafter, the "OAG"), Edward T. Buckingham, III (hereinafter, "Buckingham"), and Does 1-10 for age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended (hereinafter, the "ADEA"); for the bad faith breach of his employment contract; for the breach of the covenant of good faith and fair dealing; for his unlawful constructive termination as against public policy; and for the intentional interference with a contractual relationship, as follows:

## INTRODUCTION

1.     This action arises out of the purposeful and intentional targeting of James W. Taylor as a victim of age discrimination by the CNMI, by and through its former Attorney General, Defendant Buckingham.  As a result of the discriminatory and retaliatory employment practices that were executed and carried out by the CNMI and the OAG under Buckingham's direction, Mr. Taylor suffered and was damaged in diverse ways, including but not limited to his termination from employment; the loss of benefits and compensation due under his employment contract; and the physical and emotional deterioration resulting from the employment practices to which he was subjected.

2.     Mr. Taylor seeks compensatory and punitive damages from the government for the intentional and unlawful discrimination against him

because of his age; damages from the government for its breach of his employment contract and key covenants therein; and damages for his unlawful termination in violation of public policy.

3.    In addition to and independent of the claims against the CNMI and the OAG (hereinafter, collectively, the "Government Defendants"), Mr. Taylor also seeks compensatory and punitive damages as well as attorney's fees from Buckingham individually for his part in the scenario leading to the unlawful termination of Mr. Taylor.

## II. JURISDICTION

4.    This Court has subject matter jurisdiction against the Government Defendants pursuant to: (a) 28 U.S.C. § 1331, in that this case arises under the Constitution and laws of the United States; and (b) 29 U.S.C. § 626(c) (1), which expressly confers jurisdiction in this Court.  This Court further has subject matter jurisdiction over Mr. Taylor's claims against Buckingham, individually, pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the Plaintiff, on the one hand, and Buckingham, on the other hand, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.    Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

6.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because this is a lawsuit against the CNMI; all material events giving rise to the claims against all defendants occurred here; and most of the Defendants reside here.

### III. PARTIES

7.     At all times material hereto, Plaintiff James William Taylor was and is a citizen of the state of Washington, as well as an attorney duly licensed by the states of Washington, California, the District of Columbia, and the CNMI to practice law. Since 1981, Mr. Taylor has been primarily engaged in the practice of procurement law at the local, state and federal levels.  He is also a retired United States Air Force Lieutenant Colonel with 26 years of military service.

8.     At all times material hereto, the OAG was and is a constitutionally-created department of Defendant CNMI.    Under the Commonwealth's Constitution, the OAG is charged with, among other things, the faithful execution of the laws.

9.     Defendant Commonwealth of the Northern Mariana Islands and the Office of the Attorney General (collectively, the "CNMI Defendants") qualify as an "employer" within the meaning of 29 U.S.C. Section 630(b) by employing in excess of twenty (20) individuals for each working day in each of 20 or more calendar weeks in the current or preceding year.

10.     Defendant Buckingham is, on information and belief, a resident of the state of Iowa.  At all times material hereto, Buckingham served as the Attorney General of the Northern Mariana Islands.  In his official capacity as the Attorney General of the CNMI, Buckingham possessed the authority on behalf of the CNMI and the OAG to hire and terminate from employment assistant attorneys general; to delegate work assignments to these assistant attorneys general; to select and to name senior attorneys having supervisory authority; and to invest supervising attorneys with the authority to direct and supervise all aspects of their subordinates work assignments.  In this capacity, Buckingham was charged with the counseling of all assistant attorneys general, to deliver oral reprimands, and to make a record of any such discipline.

11.  In his official capacity, Buckingham was further empowered to develop and enforce budgets governing the operation of the OAG, to insist on the strict enforcement of Commonwealth and Federal law, and to develop, enforce, and amend policies regarding the attorneys under his supervision.

12.     Joey P. San Nicolas is the current Attorney General.  Mr. San Nicolas succeeded Buckingham in this position.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 1-10, inclusive, and each of them, are

presently unknown to Plaintiff who, therefore, sues these defendants by their fictitious names.

14.    Mr. Taylor and/or his representatives have made diligent and good faith efforts to ascertain the full names and identities, and the extent and nature of interests, of any additional defendants, and the events upon which Plaintiff's claims are premised. Mr. Taylor is nevertheless unable at this time to identify with particularity the Doe Defendants (and/or their titles and/or their relationships to other Defendants as agents, employees or independent contractors) against whom Mr. Taylor has additional prospective claims, and seeks leave to amend this complaint in order to name and identify any Doe Defendants if and when the identity of the various Doe Defendants is more fully and accurately determined.

15.    Mr. Taylor is informed and believes, and therefore alleges, that each of the defendants designated as "Doe" herein is negligently, consciously, willfully, intentionally, knowingly, recklessly, or otherwise tortiously or legally responsible in some manner for the events and happenings referred to herein, and negligently, willfully intentionally, knowingly, recklessly, or otherwise tortiously caused injuries and damages proximately thereby to Mr. Taylor as hereinafter alleged, either through said defendants' own conduct, or

1   through the conduct of their agents, servants, or employees, and each of them

2   or due to defendants' supervision, control, or instruction.

3   ## IV. FACTUAL ALLEGATIONS

4
5   16.    Mr. Taylor incorporates by reference the allegations of paragraphs 1-13

6   above.

7   17.    In 2010, Mr. Taylor was recruited by the OAG, via Defendant

8   Buckingham, to serve as an assistant attorney general pursuant to a two year

9   contract of employment, commencing on August 29, 2010 and scheduled to

10  terminate, by its terms, on August 29, 2012.  At the time of his hiring, Mr.

11
    Taylor was 63 years of age.
12

13  18.    Well before the scheduled date of his contract's expiration, however, on

14  April 13, 2011, Buckingham summoned Mr. Taylor to the law library at the

15  OAG. Also present was the Administrative Officer for the OAG, Tina Sakisat,

16  who took written notes of the meeting.

17  19.    At this meeting, Buckingham announced to Mr. Taylor that he should no

18
19  longer work for the Commonwealth of the Northern Mariana Islands.

20  20.    Buckingham threatened that unless Mr. Taylor resigned, he would be

21  terminated immediately.    Buckingham did not afford Mr. Taylor the

22  opportunity to review his employment contract, seek counsel, or the

23  opportunity to discuss, let alone consider, any alternatives.

21. Concerned about the damage to his career associated with termination, Taylor told Buckingham that he would resign.

22. Buckingham then turned over two of the three pieces of paper that had been placed on a table in front of Mr. Taylor. One was a resignation letter, a true copy of which is attached hereto and incorporated by reference herein as Exhibit "A." The second, a true and correct copy of which is attached hereto as Exhibit "B," was a letter from Buckingham to Mr. Taylor informing him that he would be repatriated pursuant to his employment contract. Buckingham did not display or disclose the contents of the third document.

23. As a senior professional understandably concerned about his professional and financial future and unaccustomed to threats from a supervisor, Mr. Taylor signed the resignation letter that Buckingham placed in front of him in order to avoid summary and immediate termination.

24. Following Mr. Taylor's departure, Buckingham hired at least six attorneys, all of whom were under the age of 40. Buckingham hired these at a salary less than that which the Commonwealth had obligated itself to pay to Mr. Taylor. Some of the new hires were as follows:

Lynette Van Wyngarden, hired August 10, 2011

Charles Brasington, hired August 15, 2011

James Kearney, hired August 30, 2011

-8-

Darrin Robinson, hired September 20, 22011

Teresita Sablan, hired February 20, 2012

Nicole Driscoll, hired June 22, 2011

25.    Mr. Taylor timely filed charges against the Commonwealth with the Equal Employment Opportunity Commission for the acts of discrimination indicated in this complaint on or about July 1, 2011.

26.    The Equal Employment Opportunity Commission issued a Notice of Right to Sue dated January 14, 2013, that was received by counsel for Mr. Taylor on January 24, 2013. A true and correct copy of the Right To Sue Notice is attached to this complaint as Exhibit "C."

27.    Plaintiff has timely filed his Complaint within ninety (90) days of receipt of the Right to Sue Letter.

28.    All conditions precedent to the maintenance of this action have occurred or been fulfilled.

**FIRST CLAIM FOR RELIEF:**
**AGAINST THE COMMONWEALTH AND THE**
**OFFICE OF THE ATTORNEY GENERAL:**
**AGE DISCRIMINATION**

29.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-28 of this complaint as if fully set forth herein.

30.    At all times material hereto, Mr. Taylor was over the age of 40.

31.    At all times material hereto, Mr. Taylor's job performance was satisfactory.

32.    Mr. Taylor was the victim of an adverse employment action.

33.    By and through the actions of its Attorney General, the CNMI discriminated against Mr. Taylor by terminating him from his employment and hiring younger employees to replace him.  The replacements held equal or inferior qualifications.

34.    The actions set forth above constitute unlawful discrimination on the basis of age.

35.    Alternatively, the criteria used to retain or hire employees and to terminate Mr. Taylor were neither neutral nor based on reasonable factors other than age.

36.    At the time it terminated Mr. Taylor's employment contract, the CNMI's government was facing significant financial constraints that required the OAG to curtail expenses.

37.    To address these realities, Buckingham proposed that if he could hire six fledgling attorneys at a cost of about $1.5M, and if the OAG could service the legal requirements of the various autonomous agencies, he could save the government $1.5M.  At the time, Buckingham claimed that the government

was spending approximately $3M per year on outside counsel legal fees for the autonomous agencies.

38.     To reach this objective, Buckingham had to find a source to free up budget funds and hire attorneys at the lowest cost possible.  To implement this part of his plan, Buckingham focused on hiring recent law school graduates. To pay them, Buckingham embarked upon a strategy to eliminate senior attorneys who were paid at a higher rate.

39.     Plaintiff James W. Taylor was targeted for constructive termination.

40.     Discharging older employees in a cost reduction effort violates the ADEA.

41.     Likewise, the precipitous termination of a senior attorney to free up funds to hire less experienced and less expensive personnel significantly, adversely or disproportionately impacted the number of attorneys over the age of 40 serving in the OAG's employ.

42.     The OAG and the CNMI are liable under the ADEA for the consequences of these actions.

43.     The OAG knew that the termination of senior employees as a cost reduction effort to pave the way for the hiring of younger attorneys was prohibited by ADEA.

44. Alternatively, the OAG's termination of Mr. Taylor showed reckless disregard for his rights under the ADEA, thereby entitling him to liquidated damages under the statute.

45. Defendants' wrongful termination of Mr. Taylor on account of his age was effected willfully, maliciously, and wantonly, in utter disregard of Plaintiff's statutory and contractual rights, thereby further entitling Mr. Taylor to punitive damages in the highest amount permissible by law.

WHEREFORE, Mr. Taylor prays for relief on his First Claim for unlawful discrimination on the basis of age as set forth below.

## SECOND CLAIM FOR RELIEF
## STATE LAW CLAIM AGAINST THE COMMONWEALTH
## AND THE OFFICE OF THE ATTORNEY GENERAL:
## BREACH OF EMPLOYMENT CONTRACT

46. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-45 of the complaint as if fully set forth herein.

47. Plaintiff was employed with by the CNMI through the OAG under a written employment contract. Section 15(B) (1) of this employment contract provided that "[t]he Employer may terminate the Employee without cause upon thirty day's notice days in advance of termination of employment."

48. In material part, the contract provided for payment, on an annual basis, of $69,000.00.

-12-

49.     Mr. Taylor's employment contract further provided for the payment of health and retirement benefits, the accrual of annual leave in the amount of eight hours per pay period, repatriation benefits, and the accrual of sick leave in the amount of four hours per pay period.

50.     The contract also provided for repatriation benefits for Mr. Taylor and his spouse as well as a lump sum payment of all accrued unused annual leave pursuant to policy.

51.     Defendants were required by Plaintiff's employment contract to provide Plaintiff with thirty (30) day's notice of termination. Such notice was not provided.

52.     Personnel policies, along with applicable rules and regulations, further guaranteed that:   (1) if an employee was performing unsatisfactorily the employee would be disciplined in accordance with the Office of the Attorney General's progressive disciplinary steps; (2) employees would be treated fairly and in accordance with the laws of the Commonwealth; and,  (3) the contract of employment would continue through its term, that demotion or discharge could only be for good cause, and that demotion or discharge would be carried out only in accordance with the written policies of the CNMI.

//

53. The CNMI and the OAG breached their contract with Mr. Taylor by, among other things:

A. Failing to treat Mr. Taylor in accordance with the Commonwealth's stated policies;

B. Terminating Plaintiff without required notice;

C. Terminating Mr. Taylor in breach of the promises made to him;

D. Hiring attorneys under the age of 40 to replace Mr. Taylor; and

E. Depriving Mr. Taylor of the benefits of his employment contract and interfering with his performance of the employment contract in the agreed upon manner.

54. As a direct, foreseeable, and proximate result of the government's breach of Mr. Taylor's employment contract, Plaintiff has suffered substantial losses in earnings and job benefits, as well as expenses incurred in the search for comparable employment.

55. Prior to accepting employment with the Commonwealth and moving to Saipan to perform under the terms of his agreement, Mr. Taylor was required to take certain steps to protect his property and financial interests during the term of his contract.

56. Precipitously terminating Mr. Taylor without notice and in violation of the laws and policies of the Commonwealth forced Mr. Taylor to incur special

-14-

and incidental damages including the cost of alternative housing, storage fees, repatriation costs, and additional costs in an amount to be proved at trial.

57.    As a further direct and proximate result of defendants' unlawful conduct, Mr. Taylor has suffered extreme and severe anguish, humiliation, emotional distress, nervousness, tension, anxiety, and depression in an amount to be proved at trial.

58.    The amount of damages attributable to Defendants' actions and caused by Defendants' conduct exceeds $75,000, exclusive of interest and costs.

WHEREFORE, Mr. Taylor requests judgment in his favor and against the CNMI and the OAG on his Second Claim for Breach of Contract as set forth below.

### THIRD CLAIM FOR RELIEF
### SUPPLEMENTAL STATE LAW CLAIM AGAINST THE COMMONWEALTH
### AND THE OFFICE OF THE ATTORNEY GENERAL:
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

59.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-58 of the complaint as if fully set forth herein.

60.    As a result of the employment relationship which existed between Mr. Taylor and his employer, the express and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in

these implied promises, the CNMI promised to act in good faith toward Mr. Taylor and deal fairly with him.

61.   Among others things, this promise required that:  (a) each party to the employment relationship act with good faith toward the other concerning all matters related to the employment;  (b) each party in the relationship act with fairness toward the other concerning all matters related to the employment;  (c) neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;  (d) the defendant employer would similarly treat employees who are similarly situated;  (e) the defendant employer would comply with its own representations, rules, policies, and procedures in dealing with Mr. Taylor;  (f) the defendant employer would not terminate Plaintiff without a fair and honest cause, shaped by good faith on the defendant employer's part;  (g) the defendant employer would not terminate Plaintiff in an unfair manner; and,  (h) the defendant employer would give plaintiff's interests as much consideration as it gave its own.

62.   The termination of Mr. Taylor's employment contract violated this covenant of good faith and fair dealing.

63.   As a direct and proximate result of the government's breach of the covenant of good faith and fair dealing, Mr. Taylor has been damaged in an amount to be proved at trial.

WHEREFORE, Mr. Taylor demands judgment against the Commonwealth on his Third Claim for breach of the covenant of good faith and fair dealing as set forth below.

### FOURTH CLAIM FOR RELIEF
### SUPPLEMENTAL STATE LAW CLAIM AGAINST THE COMMONWEALTH
### AND THE OFFICE OF THE ATTORNEY GENERAL:
### UNLAWFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY

64.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-63 of the complaint as if fully set forth herein.

65.     Mr. Taylor's forced resignation constitutes constructive termination.

66.     Mr. Taylor's constructive termination was undertaken and executed in retaliation for his opposition to publicly articulated concerns about the management of the OAG and its illegal approval of sole source contracts.

67.     Mr. Taylor's constructive termination was in retaliation for his public criticism of Buckingham and the legality of the policies and procedures that Buckingham was bent on implementing, including those involving illegal sole-source contracts.

68.     As a direct, foreseeable, and proximate result of the Commonwealth's wrongful constructive termination of Mr. Taylor in violation of the public policy, Mr. Taylor has been damaged in an amount to be proved at trial.

1   69.   The acts complained of herein were sanctioned by the CNMI and carried

2   out by its managerial employees acting in a deliberate, malicious, and

3   oppressive manner in order to injure and damage plaintiff, warranting the

4   assessment of punitive damages against the CNMI in the maximum amount

5   allowable by law.

6

7   WHEREFORE, Mr. Taylor prays for relief against the CNMI on his

8   FOURTH CLAIM for unlawful constructive termination in violation of public

9   policy.

10   **FIFTH CLAIM FOR RELIEF:**
    **SUPPLEMENTAL STATE LAW CLAIM**
11   **AGAINST BUCKINGHAM, INDIVIDUALLY:**
    **UNLAWFUL INTERFERENCE WITH CONTRACT**
12

13

14   70.   Plaintiff incorporates by reference the allegations set forth in paragraphs

15   1-69 of the complaint as if fully set forth herein.

16   71.   At all times material hereto, Mr. Taylor was employed by the

17   Commonwealth pursuant to a valid contract of employment.

18   72.   Buckingham intentionally and improperly interfered with that contract

19   and, as a result of Buckingham's actions, the contract between Mr. Taylor and

20   his employer was disrupted and eventually terminated.

21

22   //

23

-18-

73.    As a direct, foreseeable, and proximate result of the wrongful interference with Mr. Taylor's employment contract, Mr. Taylor has been damaged in an amount in to be proved at trial.

74.    Buckingham's acts were undertaken in a deliberate, malicious, oppressive, and intentional manner in order to injure and damage plaintiff and in utter disregard of his contractual rights.  They were further motivated by and in retaliation for Mr. Taylor's opposition to Buckingham's refusal to abide by CNMI law and its procurement policies.  Accordingly, Mr. Taylor is entitled to punitive damages from Buckingham in the highest amount permissible at law.

WHEREFORE, Mr. Taylor prays for relief on his Fifth Claim for tortious interference with contract against Defendant Buckingham as set forth below.

## PRAYER FOR RELIEF

Mr. Taylor prays for judgment in his favor and against Defendants as follows:

A. On his FIRST CLAIM for Unlawful Discrimination on the Basis of Age against the CNMI and the OAG:

1. Compensatory damages pursuant to the ADEA in an amount to be proved at trial;

2. Back Pay to include, without limitation, lost wages, vacation pay, medical and dental benefits; pension benefits; and such other damages to which Plaintiff is entitled at law;

3. Liquidated Damages pursuant to section 7(b) of the ADEA (29 U.S.C. § 626(b));

4. Costs incurred in the prosecution of this claim, including without limitation, reasonable attorney's fees;

5. Pre- and Post-judgment interest at a rate equal to the highest amount permitted by statute, until all amounts owing to Mr. Taylor are paid in full; and

6. Such other and further relief as the court considers just and proper under the circumstances.

B.    On his SECOND CLAIM against the CNMI and the OAG for Breach of Employment Contract:

1. Compensatory, Special, and Incidental Damages attributable to the Government Defendants' breaches of Mr. Taylor's employment contract in an amount to be proved at trial;

2. Costs incurred in the prosecution of this claim, along with reasonable attorney's fees;

3. Pre-judgment interest;

1    4. Post-judgment interest at a rate equal to the highest amount permitted

2    by law; and

3    5. Such others and further relief as the court considers just and proper.

4
     C.    On his THIRD CLAIM against the Commonwealth of the Northern
5
6    Mariana Islands and the Office of the Attorney General for Breach of the

7    Covenant of Good Faith and Fair Dealing:

8    1. All damages proximately caused by the Government Defendant's bad

9    faith breach of the covenant of good faith and fair dealing, in an amount to be

10   proved at trial;

11
     2. Costs incurred in the prosecution of this claim, along with reasonable
12
13   attorney's fees;

14   3. Pre-judgment interest;

15   4. Post-judgment interest at a rate equal to the highest amount permitted

16   by law; and

17   5. Such others and further relief as the court considers just and proper.

18
     F.    On his FOURTH CLAIM against the CNMI and the OAG for Unlawful
19
20   Constructive Termination in Violation of Public Policy;

21   1. Compensatory damages, including lost wages and benefits, and

22   emotional distress damages according to proof;

23   2. Punitive damages in the highest amount permitted by law;

3. Reasonable attorneys' fees and costs;

4. Prejudgment interest on all amounts claimed; and

5. Post-judgment interest at the highest rate permitted by statute until all amounts due and owing Mr. Taylor are paid in full; and

6. Such others and further relief as the court considers just and proper.

G.      On his FIFTH CLAIM for Tortious Interference with Contract against Edward Buckingham, III, individually:

1. All damages proximately caused by Buckingham's tortious interference with Mr. Taylor's employment contract, in an amount to be proved at trial;

2. Punitive damages in the highest amount permitted by law;

3. Costs incurred in the prosecution of this claim, along with reasonable attorney's fees;

4. Pre-judgment interest on all amounts claimed;

5. Post-judgment interest at a rate equal to the highest amount permitted by law; and

6. Such others and further relief as the court considers just and proper.

7. Demand for Jury Trial.

1

2          Respectfully submitted this 23rd day of April, 2013.

3

4

5              ___/S/_____

6          ROBERT TENORIO TORRES, ESQ. F-0197
           Attorney for Plaintiff James W. Taylor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

2 **VERIFICATION**

3 I, James W. Taylor, Plaintiff in the above-entitled action, do hereby declare

4 under penalty of perjury that I have read the contents of the foregoing

5

6 Verified Complaint, and that the allegations in the same are true and correct.

7

8 Dated this 23rd day of April, 2013 on Saipan,
Commonwealth of the Northern Mariana Islands

9

10

11 _____
James W. Taylor

12

13

14

15

16

17

18

19

20

21

22

23

-24-

April 13, 2011


Edward T. Buckingham
Attorney General
CNMI Office of the Attorney General
P.O. Box 10007
Saipan, MP  96950

      Re: Resignation

Dear Attorney General Buckingham:

This is my formal notification that I am resigning from the Office of the Attorney General as Assistant Attorney General, effective Thursday, April 14, 2011.

JAMES W. TAYLOR


**EXHIBIT A**



Commonwealth of the Northern Mariana Islands

# Office of the Attorney General

2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capital Hill
Saipan, MP 96950-8907

**Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/67/68
Fax: (670) 234-7016

**Passport Office**
Tel: (670) 664-4761
Fax: (670) 664-4764

**Domestic Violence Intervention Center**
Tel: (670) 664-4883/4
Fax: (670) 234-4589

**CONFIDENTIAL**

April 13, 2011

Mr. James W. Taylor
Assistant Attorney General
Office of the Attorney General
Civil Division
Saipan, MP  96950

Dear Mr. Taylor:

Please find attached a letter of resignation. This letter of resignation is provided in lieu of receiving a notice for termination. In order to ensure that repatriation benefits are provided, this explanatory letter may be shared as necessary for administrative purposes.

The Office of the Attorney General has represented that it shall make all reasonable efforts to maintain the confidentiality of this matter and treat, for public purposes, separation from the Office of the Attorney General as a simple "resignation."

Sincerely,

EDWARD T. BUCKINGHAM
Attorney General

**EXHIBIT
B**



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capital Hill
Saipan, MP 96950-8907

**Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/67/68
Fax: (670) 234-7016

**Passport Office**
Tel: (670) 664-4761
Fax: (670) 664-4764

**Domestic Violence**
**Intervention Center**
Tel: (670) 664-4883/4
Fax: (670) 234-4589

## CONFIDENTIAL

April 13, 2011

Mr. James W. Taylor
Assistant Attorney General
Office of the Attorney General
Civil Division
Saipan, MP  96950

Dear Mr. Taylor:

Please find attached a letter of resignation. This letter of resignation is provided in lieu of receiving a notice for termination. In order to ensure that repatriation benefits are provided, this explanatory letter may be shared as necessary for administrative purposes.

The Office of the Attorney General has represented that it shall make all reasonable efforts to maintain the confidentiality of this matter and treat, for public purposes, separation from the Office of the Attorney General as a simple "resignation."

Sincerely,

EDWARD T. BUCKINGHAM
Attorney General

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | James W. Taylor<br>c/o Robert Torres, Esq<br>P.O. Box 503758<br>Saipan, MP 96950 | From: | **Honolulu Local Office<br>300 Ala Moana Blvd<br>Room 7-127<br>Honolulu, HI 96850** |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **486-2011-00343** | **Mercedes Casasola,**<br>**Investigator** | **(808) 541-3118** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** **before you file suit may not be collectible.**

On behalf of the Commission

*Timothy A. Riera*       1/14/13

Enclosures(s)

**Timothy A. Riera,**
**Director**     *(Date Mailed)*

cc:    **CNMI-Office of the Attorney General**
c/o Isidro K. Seman
**Director**
**Office of Personnel Management**
P.O. Box 5153 CHRB
Saipan, MP 96950

**EXHIBIT**
**C**